**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

RONNIE NORWOOD,

      Petitioner,

-vs-                            Case No.  8:12-CV-1012-T-30EAJ

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER

Petitioner Ronnie Norwood (hereinafter "Petitioner") petitions for the writ of habeas corpus pursuant to Title 28 U.S.C. § 2254 (hereinafter "petition"). (Dkt. 1).  Petitioner challenges his convictions for possession of cocaine, and delivery of cocaine within 1000 feet of a school zone entered in 2005 by the Thirteenth Judicial Circuit Court in Hillsborough County, Florida.  (Dkt. 1).  Respondent has filed a response to the petition.  (Dkt. 7). Petitioner has filed a reply to Respondent's response.  (Dkt. 12).  After consideration, Petitioner's petition is DENIED.

## BACKGROUND

On February 10, 2005, Petitioner was charged by Information with delivery of cocaine within 1000 feet of a school, possession of cocaine, and trespass on property other than a structure or conveyance.  (Resp. Ex. 1, Vol. 1 at 9-12).  On August 29, 2005, Petitioner pleaded guilty to all three charges (Id. at 20-22).  Petitioner, however, successfully moved

to withdraw his plea on September 20, 2005 (Id. at 27-29).   On November 28, 2005, Petitioner pleaded guilty solely to the trespass charge, and he was sentenced to time served (Id. at 30-33).   Following a jury trial, the jury found Petitioner guilty of the possession and delivery of cocaine charges.   (Id. at 65).   Petitioner was sentenced on the delivery of cocaine charge to twenty (20) years in prison.  (Id. at 69-76).[1]   On December 1, 2006, the state appellate court per curiam affirmed Petitioner's conviction and sentence.  (Resp. Ex. 5); *Norwood v. State*, 945 So. 2d 517 (Fla. 2d DCA 2006) [table].

On March 19, 2007, Petitioner filed a Second Motion for Post-Conviction Relief pursuant to Florida Rule of Criminal Procedure 3.850 in the state circuit court.  (Resp. Ex. 9, Vol. I at 52-69).   The circuit court denied Petitioner's post-conviction motion with regard to Grounds One, Two, and Three(a), and dismissed Grounds 3(b) through 3(d), without prejudice for Petitioner to file facially sufficient claims (Id. at 70-75).   After Petitioner amended Grounds 3(b) through 3(d), the circuit court denied Ground 3(c) and ordered the State to respond to Grounds 3(b) and 3(d) (Id. at 118-20).   After receiving the State's response and Petitioner's reply to the response (Id. at 132-43), and following an evidentiary hearing on Grounds 3(b) and 3(d) on October 7, 2009 (Id. at 148-76), the state court denied Grounds 3(b) and 3(d) on December 11, 2009.  (Id. at 185-88).   On May 11, 2011, the state appellate court per curiam affirmed the denial of post-conviction relief.  (Resp. Ex. 13);

---

[1]The record indicates that the possession of cocaine charge, Count 2, was dismissed (Id. at 69).

2

*Norwood v. State*, 63 So. 3d 766 (Fla. 2d DCA 2011) [table].  The appellate court mandate issued on July 7, 2011. (Resp. Ex. 15).

Petitioner filed his federal habeas petition in this Court on May 4, 2012. (Dkt. 1).[2]  In his petition, Petitioner raises three grounds for relief:

> GROUND ONE: THE STATE COURT'S DECISION DENYING PETITIONER'S CLAIM THAT THE TRIAL COURT ERRED IN PERMITTING THE PROSECUTION TO EXCUSE TWO MINORITY JURORS, ABSENT A VALID RACE NEUTRAL REASON FOR DOING SO WAS CONTRARY TO, OR INVOLVED AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW AS SET FORTH BY THE UNITED STATES SUPREME COURT IN *BATSON V. KENTUCKY*, 476 U.S. 79 (1986).

> GROUND TWO: THE STATE COURTS [sic] DECISION DENYING PETITIONER'S CLAIM THAT HE WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN COUNSEL FAILED TO INSURE HE VIEWED A VIDEOTAPE MADE BY POLICE OF THE ALLEGED DRUG TRANSACTION PRIOR TO REJECTING THE STATE'S PLEA OFFER WAS CONTRARY TO, OR INVOLVED AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW AS SET FORTH BY THE UNITED STATES SUPREME COURT IN *STRICKLAND V. WASHINGTON*, 104 S. CT.2052 (1984).

> GROUND THREE: THIS COURT MUST VACATE PETITIONER'S CONVICTION FOR DELIVERY OF COCAINE AND POSSESSION OF COCAINE BECAUSE SECTION 893.13, FLORIDA STATUTES, IS UNCONSTITUTIONAL ON ITS FACE.

---

[2]Although the Court received Petitioner's petition on May 7, 2012, a *pro se* inmate's petition is deemed filed the date it is delivered to prison officials for mailing. *Houston v. Lack,* 487 U.S. 266, 271-272 (1988); *Adams v. United States,* 173 F.3d 1339, 1340-41 (11th Cir. 1999); *Garvey v. Vaughn,* 993 F.2d 776, 780 (11th Cir. 1993). Petitioner delivered his petition to prison officials for mailing on May 4, 2012 (Dkt. 1 at 1).

## STANDARD OF REVIEW

Under 28 U.S.C. § 2254(d) and (e)  as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law, including constitutional issues, must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362, 386 (2000). It is not enough that the federal courts believe that the state court was wrong; the state court decision must have been "objectively unreasonable." *Id*.; *Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

## INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD

*Strickland v. Washington*, 466 U.S. 668 (1984), governs ineffective assistance of counsel claims.[3]  *Strickland* noted that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 692-93.  There is a strong presumption, however, that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. Because the court presumes effective assistance of counsel, Petitioner

---

[3]*See Chatom v. White*, 858 F.2d 1479, 1485 (11th Cir. 1988); *Dobbs v. Turpin*, 142 F.3d 1383, 1387 (11th Cir. 1998); *Francis v. Dugger*, 908 F.2d 696, 702 (11th Cir. 1990).

4

must prove both constitutionally deficient performance and resulting prejudice under *Strickland* to receive relief. *Id*. at 687.

To satisfy the two-part *Strickland* test, Petitioner must show a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Consequently, Petitioner may only succeed in claiming ineffective assistance if counsel failed to perform in a manner which was constitutionally compelled and that failure undermined the outcome of the trial. *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665, n. 38 (1984)).

## PROCEDURAL DEFAULT

A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. 2254(b)(1)(A); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998). In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also, Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)); *Duncan v. Henry*, 513 U.S. 364 (1995) ("[E]xhaustion of state remedies requires that the state prisoner 'fairly present' federal claims to the state courts in order to

5

give the State the 'opportunity to pass upon and correct alleged violations of its prisoners'
federal rights[.]'") (citation omitted).

Under the procedural default doctrine, "if the petitioner has failed to exhaust state
remedies that are no longer available, that failure is a procedural default which will bar
federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage
of justice exception is applicable." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).
"The doctrine of procedural default was developed as a means of ensuring that federal habeas
petitioners first seek relief in accordance with established state procedures." *Henderson*, 353
F.3d at 891 (quoting *Judd v. Haley*, 250 F.3d at 1313).

Pre-AEDPA decisions from the Supreme Court establish the framework governing
procedural default in federal habeas cases. A procedural default will only be excused in two
narrow circumstances. First, Petitioner may obtain federal habeas review of a procedurally
defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from
the default. "Cause" ordinarily requires Petitioner to demonstrate that some objective factor
external to the defense impeded the effort to raise the claim properly in the state court.
*Henderson*, 353 F.3d at 892; *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995).

To show "prejudice," Petitioner must show "not merely that the errors at his trial
created a possibility of prejudice, but that they worked to his factual and substantial
disadvantage, infecting his entire trial with error of constitutional dimensions." *Hollis v.
Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting *United States v. Frady*, 456 U.S. 152,

170 (1982)).  Petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson*, 353 F.3d at 892.

Second, Petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Henderson*, 353 F.3d at 892. This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Henderson*, 353 F.3d at 892. The fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence rather than his "legal" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001) (citing *Calderon v. Thompson*, 523 U.S. 538, 559 (1998)).  To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  In addition, "'to be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon*, 523 U.S. at 559 (quoting *Schlup*, 513 U.S. at 324) (explaining "given the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected") (internal quotation marks omitted).

## DISCUSSION

### Ground One

Petitioner contends that the trial court erred in permitting the State to use two peremptory strikes against two African American prospective jurors, Ms. Hunt and Ms.

Jones, during voir dire.  Petitioner argues that the State's striking of these prospective jurors

violated *Batson v. Kentucky*, 476 U.S. 79 (1986).  Petitioner states that although the State

articulated a nondiscriminatory explanation for its challenges to Hunt and Jones, i.e., they

both had brothers involved in the criminal justice system, and Jones stated that she did not

believe that she was treated fairly by law enforcement when she was stopped for a traffic

violation, the trial court failed to determine the genuineness of the State's reasons for striking

Hunt and Jones.

Initially, Respondent argues that this claim is procedurally defaulted because the issue

was not preserved for appeal since defense counsel accepted the jury panel without renewing

his objections to the exclusion of Hunt and Jones.   This Court agrees.  The record reflects

that defense counsel failed to preserve the *Batson* claim for appeal by failing to renew his

*Batson* objections before accepting the jury.  In *Zack v. State*, 911 So.2d 1190 (Fla. 2005),

the Florida Supreme Court of Florida set forth the required procedure for preserving *Batson*

claims for appeal.

> In this claim, both parties rely on *Melbourne v. State*, 679 So.2d 759 (Fla.
> 1996), to explain the proper procedure for preserving a claim that a peremptory
> challenge is racially motivated. In *Melbourne*, this Court explained that a party
> objecting to the other side's use of a peremptory challenge on racial grounds
> must: (1) make a timely objection on that basis; (2) show that the venire person
> is a member of a distinct racial group; and (3) request that the court ask the
> striking party its reason for the strike. The burden then shifts to the proponent
> of the strike to present a race-neutral explanation.  If the explanation is facially
> race-neutral and the court believes that the explanation is not a pretext, the
> strike will be sustained. But even if the procedure is followed precisely, ***the
> issue is not preserved for appellate review if the party objecting to the
> challenge fails to renew the objection before the jury is sworn***. See *Franqui
> v. State*, 699 So.2d 1332, 1334 (Fla. 1997); *Joiner v. State*, 618 So.2d 174 (Fla.

1993). By not renewing the objection prior to the jury being sworn, it is presumed that the objecting party abandoned any prior objection he or she may have had and was satisfied with the selected jury. *See Joiner*, 618 So.2d at 176 ("[C]ounsel's action in accepting the jury led to a reasonable assumption that he had abandoned, for whatever reason, his earlier objection. It is reasonable to conclude that events occurring subsequent to his objection caused him to be satisfied with the jury about to be sworn.").

Defense counsel objected at the time the State exercised its peremptory challenge, but when the jury was sworn, he made no objection to the final jury. The issue is therefore deemed abandoned.

*Id*. at 1204-05.

Although in Petitioner's case defense counsel timely objected to the State's use of peremptory challenges against Hunt and Jones (Resp. Ex. 1, Vol. 2 at 59-60), the objections were insufficient to preserve a *Batson* claim for appeal because defense counsel failed to renew the objections a second time at the conclusion of voir dire (Id. at 61-65).  *See Davis v. Sec'y for the Dep't of Corr.*, 341 F.3d 1310, 1315 (11th Cir. 2003) ("Under Florida law, simply objecting to the state's possibly discriminatory strikes, and then countering any purportedly race-neutral explanation given by the prosecution, does not suffice to preserve a *Batson* claim for appeal. Rather, trial counsel must press the already rejected challenge a second time at the conclusion of voir dire, either by expressly renewing the objection or by accepting the jury pursuant to a reservation of this claim.").

In its Answer Brief, the State raised failure to preserve the *Batson* claim and addressed the claim on the merits. (Resp. Ex. 4).  The State District Court of Appeal per curiam affirmed. (Resp. Ex. 5).  Where the State has briefed both an applicable procedural bar and the merits with respect to a given point, and the appellate decision is silent on the point, there

is a presumption that the state decision rests on the procedural default. *Bennett v. Fortner*, 863 F.2d 804 (11th Cir. 1989) ("This circuit to a point has presumed that when a procedural default is asserted on appeal and the state appellate court has not clearly indicated that in affirming it is reaching the merits, the state court's opinion is based on the procedural default.").[4]

Petitioner has not shown valid cause to excuse the default. Furthermore, he does not meet the prejudice or manifest injustice exceptions to lift the independent and adequate state bar applicable to Ground One. Consequently, Ground One is procedurally defaulted.

Even if Ground One were not procedurally defaulted, the claim does not warrant federal habeas relief. *Batson* held that the Equal Protection Clause prohibits a party from striking a potential juror solely on basis of race. In *Batson*, the Supreme Court established the test to be used in determining whether either party engaged in race-based exclusions of potential jurors through peremptory challenges. The test involves a three-step inquiry:

> First, the defendant must make out a prima facie case "by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." 476 U.S., at 93-94, 106 S. Ct. 1712 (citing *Washington v. Davis*, 426 U.S. 229, 239-242, 96 S. Ct. 2040, 48 L. Ed. 2d 597 (1976)) (footnote omitted). Second, once the defendant has made out a prima facie case, the "burden shifts to the State to explain adequately the racial exclusion" by

---

[4]The Court notes that in *Harrington v. Richter*, 131 S. Ct. 770 (2011), the Supreme Court held that "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or *state-law procedural principles to the contrary*." *Id.* at 784-85 (emphasis added). This presumption "may be overcome when there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785. Because the State correctly argued that the *Batson* claim had not been preserved, and because Florida's preservation requirement is regularly and consistently applied, this Court concludes that the presumption that the state appellate court adjudicated the claim on the merits has been overcome because it is more likely that the appellate court adjudicated the claim on procedural grounds.

> offering permissible race-neutral justifications for the strikes. 476 U.S., at 94, 106 S. Ct. 1712; *see also Alexander v. Louisiana*, 405 U.S. 625, 632, 92 S. Ct. 1221, 31 L. Ed. 2d 536 (1972). Third, "[i]f a race-neutral explanation is tendered, the trial court must then decide ... whether the opponent of the strike has proved purposeful racial discrimination." *Purkett v. Elem*, 514 U.S. 765, 767, 115 S. Ct. 1769, 131 L. Ed. 2d 834 (1995) (per curiam).

*Johnson v. California*, 545 U.S. 162, 168 (2005).

In his Initial Brief on direct appeal, Petitioner only argued that the State exercised peremptory challenges to strike two African American potential jurors over objection, and that those potential jurors stated that they could be fair and impartial. (Resp. Ex. 3 at initial brief pages 2-5). Moreover, at trial, defense counsel objected to the State's exclusion of Hunt and Jones, but did not present the trial court with any evidence in support of a *Batson* violation (Resp. Ex. 1, Vol. 2 at 59-65).

In making out a prima facie case, the defendant must point to more than the bare fact of the removal of certain venire persons. *See United States v. Allison*, 908 F. 2d 1531, 1538 (11th Cir.1990) (citations omitted). "The defendant must identify facts and circumstances that support the inference of discrimination, such as a pattern of discriminatory strikes, the prosecutor's statements during voir dire suggesting discriminatory purpose, or the fact that white persons were chosen for the petit jury who seemed to have the same qualities as stricken black venirepersons." *Id*. (quoting *United States v. Young-Bey,* 893 F.2d 178, 180 (8th Cir. 1990) (citing *Batson*, 476 U.S. at 96-97). "A moving party is required to present evidence other than the bare fact of a juror's removal 'and the absence of an obvious valid reason for the removal' to demonstrate a prima facie case of discrimination." *United States*

*v. Hilel*, 352 Fed. Appx. 378, 379 (11th Cir.2009) (unpublished opinion) (quoting *Allison*, 908 F.2d at 1538).  "Merely asking for a race neutral explanation, without any additional support or argument, is not enough to meet the defendant's burden of making a prima facie case under the [sic] *Batson*. . ."  *Guerrero v. Payant*, 2010 U.S. Dist. LEXIS 61723, at *46 (E.D.N.Y. June 21, 2010) (citations omitted).

Petitioner did not allege anything at trial or in his state Initial Brief, nor present or point to any evidence, that strongly suggested racial motivation was the basis for the State's exclusion of Hunt and Jones.  Thus, Petitioner did not establish a prima facie showing of racial motivation.

Consequently, even if the state appellate court did adjudicate this claim on the merits, the denial of the claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Thus, Ground One does not warrant federal habeas relief under § 2254(d)(1).[5]

---

[5]The Court notes that Petitioner argues that he is entitled to relief on this claim because the trial court failed to "make a finding as to whether the reason offered for the strike was a pretext." (Dkt. 12 at 3).  *Batson*, however, "does not require elaborate factual findings" about  purposeful discrimination.  *Greene v. Upton*, 644 F.3d 1145, 1155 (11th Cir. 2011) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 328-29 (2003); *Hightower v. Terry*, 459 F.3d 1067, 1072 n. 9 (11th Cir. 2006) ("We may therefore make 'the common sense judgment'—in light of defense counsel's failure to rebut the prosecutor's explanations and the trial court's ultimate ruling—that the trial court implicitly found the prosecutor's race-neutral explanations to be credible, thereby completing step three of the *Batson* inquiry.")).  Defense counsel failed to rebut the prosecutor's race-neutral explanations (Resp. Ex. 1, Vol. 2 at 59-60).  Therefore, by ruling that the prosecutor had provided a "race-neutral reason" for excluding both Hunt and Jones (id.), the trial court implicitly found the explanations credible.  This Court must presume that finding to be correct. See 28 U.S.C. § 2254(e) (1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").  The trial judge was in the best position to determine the genuineness of the State's reasons for striking Hunt and Jones.  Petitioner has not demonstrated by clear and convincing evidence that it was unreasonable for the state court to accept the State's race-neutral reasons.  Consequently, the state court's implicit finding that the State's race-neutral reasons were genuine was not contrary to or an unreasonable application of *Batson*, and was not an unreasonable determination of the facts in light of the evidence presented in the court.

**Ground Two**

In Ground Two, Petitioner appears to assert that counsel was ineffective in failing to inform the state trial court that the State failed to provide Petitioner with a copy of the videotape of the drug transaction involving Petitioner "until the last moment after [the State] had already withdrew [sic] [its] plea offer." (Dkt. 1 at 8). Petitioner further asserts that he did not watch the videotape until five days prior to trial, and that prevented him from being adequately prepared for trial, and deprived him the opportunity to make an informed decision regarding whether to accept the State's offer of a three-year prison term or proceed to trial. He opines that had counsel informed the trial court of the State's delay in providing the videotape, "the trial court may have reinstated the 3-year plea offer as a sanction on the State." (Id.).

Petitioner raised this claim in state court as Ground 3(B) of his "Motion to Amend Previously Filed 3.850 Post-Conviction Motion" (Resp. Ex. 9, Vol. 1 at 110-12). In denying the claim, the state post conviction court stated:

> In ground three(b), Defendant alleges ineffective assistance of counsel for counsel's failure to bring to the Court's attention the State's failure to give Defendant a copy of the videotape made by police of the alleged transaction between Defendant and an undercover police officer. Defendant further alleges ineffective assistance of counsel for counsel's failure to move to suppress the videotape due to untimeliness. Defendant contends that the State did not turn over the videotape until approximately six days prior to trial and that this prejudiced Defendant because Defendant could not properly assess the State's plea offer without viewing the videotape and Defendant could not prepare for his defense. Defendant claims that had counsel brought the matter to the Court's attention, the videotape would have been excluded as evidence, the State would have been unable to identify Defendant, and Defendant would have accepted the State's plea offer of three years' FSP.

***

Defendant's trial counsel, Marcia Perlin, testified at the evidentiary hearing. Ms. Perlin testified that there were two videos of the transaction in which Defendant was allegedly involved, a black and white copy and a color copy. (See Transcript, p. 6, attached). Ms. Perlin testified that one of the copies was a "good, clean copy" and one was not. (See Transcript, p. 6, attached). She testified that she showed Defendant one of the videos on July 1, 2005, at the Falkenburg Road Jail. (See Transcript, pp. 6-7, attached). Ms. Perlin further testified that after seeing the first videotape, she requested a better quality videotape and showed Defendant the second copy on approximately August 26, 2005. (See Transcript, p. 8, attached).

Defendant testified that the State offered a plea deal of three years' FSP "from the beginning." (See Transcript, pp. 23-24, attached). Defendant testified that he remembered seeing both videotapes at the same time in August of 2005. (See Transcript, pp. 18- 19, attached). Defendant testified that after seeing the videos he decided to accept the State's plea offer of three years FSP, but that the State had withdrawn its offer. (See Transcript, p. 19, attached).

***

"In reviewing counsel's performance, the reviewing court must be highly deferential to counsel, and in assessing the performance, every effort must 'be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Ferrell v. State*, 918 So. 2d 163, 170 (Fla. 2005) (quoting *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052).

The Court finds Ms. Perlin's testimony credible. The Court finds that Ms. Perlin obtained and showed Defendant both copies of the videotapes depicting Defendant delivering cocaine within 1000 feet of a school. Thus, the Court does not find that there was any basis to suppress the videotapes. Additionally, the Court cannot find counsel's performance deficient because the State withdrew its offer before Defendant decided to accept it. **Accordingly, Defendant is not entitled to any relief on ground three(b)**.

(Resp. Ex. 9, Vol. 1 at 144-46) (emphasis in original).

14

Initially, the Court agrees with Respondent that Petitioner's claim in Ground Two is unexhausted and procedurally barred because Petitioner did not raise this claim on collateral appeal after the post conviction court denied his Rule 3.850 motion.  In Florida, a petitioner is considered to have abandoned claims which were not briefed with specific argument thereon.  *Simmons v. State*, 934 So.2d 1100, 1111 n. 12 (Fla. 2006) (citing *Coolen v. State*, 696 So.2d 738, 742 n.2 (Fla. 1997)).

In an appeal from the summary denial of a Rule 3.850 motion without an evidentiary hearing, no briefs or oral arguments are required. Fla.R.App.P. 9.141(b)(2)(C).  Petitioner's post conviction appeal, however, followed an evidentiary hearing on the issue presented in this ground.  Therefore, Petitioner was required to brief this ground.  *See Atkins v. Singletary*, 965 F.2d 952, 955 (11th Cir. 1992); *Cortes v. Gladish*, 216 Fed.Appx. 897, 899-900 (11th Cir. 2007); Fla.R.App.P. 9.141(b)(3)(C); *Cunningham v. State*, 37 Fla. L. Weekly D 385 (Fla. 2nd DCA 2012) (9.141(b)(3)(C) required briefing "for grounds that were denied after an evidentiary hearing.").  Because Petitioner did not brief this ground in his post conviction appeal, and instead briefed a different issue,[6] he waived or abandoned it.

Any allegation of cause is now procedurally barred by the two-year limitation of Rule 3.850, *see Whiddon v. Dugger*, 894 F.2d 1266 (11th Cir. 1990), and the State's successive petition bar. *See Vining v. State*, 827 So. 2d 201, 213 (Fla. 2002). Not showing cause or

---

[6]In his Initial Brief, Petitioner asserted that defense counsel rendered ineffective assistance in failing to inform Petitioner that the State could withdraw its 3-year plea offer (Resp. Ex. 10 at Initial Brief pages 2-3).  That claim is different from the claim raised in Petitioner's Rule 3.850 motion, and Ground Two of the instant petition, i.e., that counsel was ineffective in failing to inform the state trial court that the State failed to timely provide Petitioner with a copy of the videotape.

actual innocence, Petitioner cannot avoid default on this ground.  *See Engle v. Isaac*, 456 U.S. 107, 135 (1982).

Even if this ground were not unexhausted and procedurally barred, it would fail on the merits.[7]  The state post conviction court found that counsel's performance was not deficient "because the State withdrew its offer before [Petitioner] decided to accept it." (Resp. Ex. 9, Vol. 1 at 146). The court further noted that Petitioner was not harmed by his counsel's representation because counsel had shown both copies of the videotape (one good quality copy and one bad quality copy) to Petitioner, and there was no basis to suppress the videotapes.  (Id.).

The transcript of the evidentiary hearing on Petitioner's Rule 3.850 motion shows that defense counsel began representing Petitioner in June 2005. (Id. at record page 160).  On July 1, 2005, counsel visited Petitioner at the jail, and she and Petitioner watched a videotape of the drug transaction. (Id. at record page 153).  The quality of that video, however, was poor (Id.).  Therefore, counsel requested the State provide her with another copy of the videotape (Id. at record pages 154-55).  On August 26, 2005, counsel brought the new, good quality videotape to Petitioner, and she and Petitioner watched the good quality videotape. (Id.). Petitioner admitted during the evidentiary hearing that he saw both videotapes, but he thought he saw both videotapes on the same day in August 2005. (Id. at record page 165).

---

[7]"An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).

Petitioner fails to show counsel's performance was deficient, or that he was prejudiced by counsel's representation. To the extent Petitioner is asserting that counsel should have shown him the good quality videotape earlier so that he could have made "a truly informed decision as to whether on not to accept the state's 3-year plea offer. . ." (Dkt. 1 at 8), the record shows that the State Attorney's Office provided defense counsel with the good quality videotape on August 25, 2005. (Resp. Ex. 9, Vol. 1 at record pages 133, 139). Therefore, Petitioner does not show that counsel could have shown him the good quality videotape any earlier than she did.[8]

To the extent Petitioner asserts that counsel should have notified the trial court that the State did not provide a good quality video tape until five days before the trial, Petitioner does not show that he was prejudiced. Petitioner's assertion that had counsel notified the trial court about the videotape issue, the court "may have reinstated the 3-year plea offer as a sanction on the State," is wholly speculative. Vague, conclusory, speculative, or unsupported claims are insufficient to support claims of ineffective assistance of counsel. *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991), *cert. denied*, 502 U.S. 1105 (1992).[9]

---

[8]The Court notes that counsel showed Petitioner a videotape of the drug transaction on July 1, 2005. Although the quality of that videotape was not good, it gave Petitioner notice that the State had videotape evidence of the drug transaction.

[9]The Court notes that during the evidentiary hearing on Petitioner Rule 3.850 motion, the judge presiding over the hearing made it clear to Petitioner that until a defendant accepts a plea offer, "the State can. . .revoke their offer at any time they want." (Resp. Ex. 9, Vol. 1 at record page 172). *See Sirota v. State*, 95 So. 3d 313, 318 (Fla. 4th DCA 2012) ("The State can rescind [a plea] offer at any time up until formal acceptance by the court—even if the defendant has conveyed his acceptance."). Further, Petitioner provides no evidence or law indicating that the state trial court had the authority to sanction the State by directing it to "reinstate" the plea offer.

Similarly, Petitioner's assertion that the State's failure to timely provide him with the videotape "prevented him from being adequately prepared for trial" (Dkt. 8 at 9), is conclusory. Petitioner provides no specifics to support his claim that he was unable to adequately prepare for trial. Further, Petitioner had more than adequate time to prepare for trial after viewing the good quality videotape in August 2005, because his trial did not actually commence until November 28, 2005 (Resp. Ex. 1, Vol. 2).[10]

The state court's decision to deny this ineffective assistance of counsel claim is not contrary to or an unreasonable application of clearly established federal law. Accordingly, he is not entitled to federal habeas corpus relief on Ground Two.

**Ground Three**

Petitioner was charged and convicted under Fla. Stat. § 893.13. (Resp. Ex. 1, Vol. 1 at 14). Petitioner challenges the constitutionality of Section 893.13 based on the reasoning in *Shelton v. Secretary, Department of Corrections*, 802 F. Supp. 2d 1289 (M.D. Fla. 2011). *Shelton* determined that, by eliminating *mens rea* as an element, Section 893.13 was facially unconstitutional under the Due Process Clause.

Initially, Respondent contends that Ground Three is unexhausted and now procedurally defaulted because Petitioner did not present this claim to the state courts. In his reply, Petitioner concedes that the claim is unexhausted. He argues, however, that the claim is not barred from review in this Court because it would have been futile to present the claim

_____

[10]Petitioner's trial was originally scheduled to start on August 29, 2005 (Resp. Ex. 1, Vol. 1 at 27–29). Petitioner, however, pleaded guilty to the charges on August 29, 2005, then successfully withdrew his plea in September 2005 (Id.).

to the state courts since the Florida courts have upheld the constitutionality of Section 893.13.

The record supports the Respondent's exhaustion argument. Further, because Petitioner should have challenged the constitutionality of Section 893.13 in state court on direct appeal of his conviction, and because a second direct appeal is not available, the claim is considered procedurally defaulted. *See O'Sullivan*, 526 U.S. at 839-40, 848. Petitioner fails to demonstrate cause and prejudice excusing his default, and fails to show that the fundamental miscarriage of justice exception applies. Therefore, the claim is procedurally barred from federal review.[11]

Even if Ground Three were not unexhausted and procedurally barred, it would fail on the merits. First, this Court has held, contrary to *Shelton*, that Florida's Comprehensive Drug Abuse Prevention and Control Act[12] is not facially unconstitutional. *United States v. Bunton*, 2011 U.S. Dist. LEXIS 123945, 2011 WL 5080307 (M.D. Fla. October 26, 2011) (the 2002 amendment to Florida's Comprehensive Drug Abuse Prevention and Control Act, codified at Fla. Stat. § 893.101, does not result in a facially unconstitutional statute because even without a *mens rea* requirement, it still satisfies due process). Second, "[i]n order to obtain federal habeas relief under the Antiterrorism and Effective Death Penalty Act...[Petitioner]

---

[11]Even if there is a "futility" exception to Section 2254's exhaustion requirement on the ground that the claim would have been denied on the merits in state court, the exception is inapplicable in Petitioner's case because he has not shown that at the time of his direct appeal, the Florida Supreme Court had determined that Section 893.13 does not violate due process. *See, e.g., Fields v. Tankersley*, 487 F. Supp. 1389, 1391 (S.D. Ga. 1980) ("[A]n application to a state court would be futile if the highest state court has consistently ruled against the legal position a petitioner would hold.").

[12]Chapter 893, Fla. Stat.

must show that the state court decision adjudicating his claims (1) was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedents. . ." *Philmore v. McNeil*, 575 F.3d 1251, 1255 (11th Cir. 2009). Petitioner's claim pursuant to *Shelton* is foreclosed by the Eleventh Circuit Court of Appeals' decision in *Shelton v. Sec. Dep't of Corr.*, 691 F.3d 1348 (11th Cir. 2012) in which the Eleventh Circuit reversed the district court's decision in *Shelton*, and held that the Florida Supreme Court's decision in *State v. Adkins*, 96 So. 3d 412 (Fla. 2012) upholding Florida's Comprehensive Drug Abuse Prevention and Control Act under the Due Process Clauses of the Florida and the United States Constitutions was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." *See Shelton v. Sec. Dep't of Corr.*, 691 F.3d at 1355 (concluding that "nothing in the *U.S. Reports* decides or implies resolution of the novel issue of the Florida Act's constitutionality, and we cannot find Florida's adjudication to be unreasonable under AEDPA").

Accordingly, Ground Three does not warrant habeas relief.

## EVIDENTIARY HEARING

An evidentiary hearing is unnecessary as it "plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief." *Broadwater v. United States*, 292 F.3d 1302, 1303 (11th Cir. 2002).

Accordingly, the Court **ORDERS** that the petition for writ of habeas corpus (Dkt. 1) is **DENIED**. The clerk is directed to enter judgment against Petitioner, terminate any pending motions, and close this case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability.  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability (COA).  (Id.).  "A [COA] may issue. . .only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2).  To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004)(quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003)(quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)).  Petitioner cannot make the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**DONE** and **ORDERED** in Tampa, Florida on November 29, 2012.

_____

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

SA: sfc
Copies furnished to:
Counsel/Parties of Record